*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DUNNAWAY, Minors.

UNPUBLISHED
July 16, 2026
10:36 AM

No. 376581
Wayne Circuit Court
Juvenile Division
LC No. 2023-000562-NA

Before: GADOLA, C.J., and REDFORD and RICK, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order terminating her parental rights to her minor children, DMD and JKD, under MCL 712A.19b(3)(a)(*ii*) (desertion of child for 91 or more days); MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist); MCL 712A.19b(3)(c)(*ii*) (failure to rectify other conditions); MCL 712A.19b(3)(g) (failure to provide proper care or custody); and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent). We affirm the trial court's ruling as to statutory grounds, but vacate the trial court's best-interests determination, and remand for reconsideration of whether a guardianship with mother's aunt would be an appropriate alternative to termination of mother's parental rights in this matter.

## I. FACTUAL BACKGROUND

In April 2023, petitioner, the Department of Health and Human Services (DHHS), filed a petition alleging that remaining in mother's care would be contrary to the children's welfare "due to abandonment and physical neglect." According to the petition, mother told a Children's Protective Services (CPS) investigator that she could "no longer care for the children" and stated that she would be dropping them off at a DHHS office. Mother further explained to the investigator that she was unable to care for the children because "she was overwhelmed and trying to get herself together . . . ." At the preliminary hearing, DHHS stated that the children would need to be placed in foster care because there were no relatives in Michigan to care for them. Prior to the filing of the petition, the children had been living with mother's aunt in Ohio for two or three months. Mother's aunt was prepared to pursue guardianship of the children. When asked why she did not apply for a guardianship in Ohio, mother's aunt explained that the DHHS worker who filed the

petition told her that she would "have to go to court first." However, mother's aunt asserted that she was willing to stay in Michigan to care for the children because she did not want the children to be placed in foster care. The trial court thereafter authorized the petition.

The children were initially placed with mother's aunt, and thereafter placed in a foster home. The record does not explain why they were removed from their placement with mother's aunt. At most, the record indicates that DHHS discussed an interstate placement with the aunt, but there is no evidence that DHHS pursued that placement. The trial court held a bench trial, and mother admitted to the allegations in the petition. The trial court thereafter ordered that mother comply with and benefit from a case service plan (CSP). As part of the CSP, mother was required to participate in parenting classes and individual counseling, attend parenting time, and maintain suitable housing and income.

At the first dispositional review hearing, the children's case manager stated that mother was making some progress with her CSP, noting that mother had attended some parenting classes and therapy sessions. However, mother had not attended parenting time. The case manager testified that mother did not have her own transportation. At that point, DHHS did not offer mother transportation assistance, and mother did not request transportation assistance. Mother continued to struggle with adhering to her CSP. At a dispositional review hearing held in June 2024, the children's case manager stated that mother was attending therapy, but had to be referred again for parenting classes after missing two consecutive sessions. The trial court indicated that mother was not making progress with her service plan.

Another dispositional review hearing was held in September 2024. By that point, mother had secured employment and was attending weekly parenting time. She had additionally completed a psychological evaluation and was referred for substance abuse counseling, including random drug screenings.[1] The children's case manager recommended that mother receive a "parent partner and supportive visitation . . . ." The trial court ordered these services. Mother requested that DHHS assist her with transportation, but the trial court did not order transportation assistance.

At a hearing in December 2024, the children's foster care supervisor reported that mother had one parenting time in October 2024 and another time "over Thanksgiving." Mother had not had direct contact with the children's caseworker since November 14, 2024. Mother was still attending individual therapy, but was not participating in any other services and had not remained in contact with DHHS. The children had been placed with their grandmother, but at their grandmother's request, they were later removed and placed back with the nonrelative foster family that had previously fostered them. The foster family indicated that they would be willing to adopt the children, should the permanency plan change. The children's grandmother stated that she was not willing to adopt them. The trial court ruled that reasonable efforts had been made and directed DHHS to file a supplemental petition for termination of mother's parental rights. The supplemental petition alleged that mother did not complete parenting classes, individual therapy,

---

[1] The supplemental petition indicates that mother "ha[d] a history of abusing marijuana."

or substance abuse counseling. It further alleged that mother missed 116 of 134 scheduled parenting times and was not bonded with the children.

A termination hearing was held in May 2025. The children's foster care worker testified that mother was referred three times for parenting classes, but never completed the classes. She gave different reasons for not attending the classes, "rang[ing] from no phone, she wasn't able to log in, she forgot; things like that." Mother's therapy was terminated in February 2025 because the therapist could not contact her. Further, mother did not have a verified source of income from January 2025 through March 2025. Mother had informed the children's caseworker that she lived with her grandmother after the fall of 2024, but did not provide an address. DHHS offered respondent-mother weekly parenting time, but she attended only 18 times in 14 months, with the last session taking place in the fall of 2024.

The children's foster parents continued to indicate that they were willing to adopt. According to the children's caseworker, guardianship had not been explored in-depth because mother had been hostile toward the foster parents. Mother "refuse[d] to communicate appropriately with the current placement and . . . accused them multiple times of physical or emotional abuse . . . ." The caseworker testified that the children were doing "fantastic" in foster care and meeting appropriate developmental milestones. She additionally testified that the children were bonded with the foster parents.[2]

The trial court noted that mother did not complete parenting classes, a substance abuse assessment, or individual therapy in accordance with her CSP. The court noted that the substance abuse assessment was ordered by extension following mother's psychological evaluation, and emphasized that it was "a huge, huge issue." The court found that mother failed to provide proof of housing or income. She additionally missed more than half of her parenting time sessions. The court noted that, despite being offered two sessions per week for 14 months, mother indicated that she only wanted to attend one session per week. Even calculating for only one parenting time session per week during that window, mother only attended 18 total sessions. The trial court further found that the children had been in foster care for over two years and stated that mother was no closer to reunification than she was when the children were first brought into DHHS's care. The trial court thus ruled that clear and convincing evidence had been presented to support termination of mother's parental rights under MCL 712A.19b(3)(a)(ii), (c)(i), (c)(ii), (g), and (j).

Regarding best interests, the trial court found that the children were "thriving in foster care." The court continued that mother could not provide them with "necessary care and services", noting that the children looked to their foster parents for permanency and stability, rather than to mother. Accordingly, the court ruled that termination was in the children's best interests. An order terminating mother's parental rights was subsequently entered. This appeal followed.

---

[2] Mother did not testify at the hearing and appeared to be having issues connecting during the hearing, which she connected to via Zoom. At one point during the hearing, mother's counsel indicated, "she's no longer with us[,]" and respondent's mother stated that mother was "charging up her phone."

II. ANALYSIS

A. STATUTORY GROUNDS

Mother argues that the trial court erred by finding that statutory grounds existed to support terminating her parental rights. We agree in part, but find that reversal is unwarranted in this instance.

The trial court found that statutory grounds for termination existed under MCL 712A.19b(3)(a)(*ii*) (desertion of child for 91 or more days); MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist); MCL 712A.19b(3)(c)(*ii*) (failure to rectify other conditions that caused jurisdiction); MCL 712A.19b(3)(g) (failure to provide proper care or custody); and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent). This Court reviews for clear error the trial court's determination that statutory grounds exist to terminate a respondent's parental rights. *In re Mason*, 486 Mich 142, 152; 782 NW2d 147 (2010). "A finding is clearly erroneous [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id.* (quotation marks and citation omitted; alteration in original). This Court reviews the trial court's interpretation of statutes and court rules de novo. *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).

Under MCL 712A.19b(3)(a)(*ii*), a trial court may terminate parental rights if it finds clear and convincing evidence the parent "has deserted the child for 91 or more days and has not sought custody of the child during that period." Mother argues that she did not desert the children, noting that she proactively sought assistance from DHHS and placed the children with relatives before the petition was filed. The evidence supports this argument. Mother brought the children to DHHS for assistance while she addressed postpartum depression and housing issues. She maintained contact with workers, consistently attended court hearings throughout the case to the best of her ability, and visited the children as recently as November 2024. These facts contradict any claim of a 91-day period without seeking custody. The trial court erred by ruling otherwise.

The trial court also erroneously found statutory grounds for termination under MCL 712A.19b(3)(j), which allows for termination if "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if . . . returned to the home of the parent." To satisfy this requirement, DHHS must present some evidence that the respondent "ever harmed [their] child or was likely to harm [their] child," either physically or emotionally. See *In re Pops*, 315 Mich App 590, 600; 890 NW2d 902 (2016); *In re Sanborn*, 337 Mich App 252, 279; 976 NW2d 44 (2021). DHHS alleged that mother did not provide any necessary items for the children and that they wore dirty clothes. Although mother admitted to being unable to care for the children, DHHS never presented evidence showing that she physically or emotionally harmed them, or that she was likely to harm them in the future. Indeed, mother had no prior DHHS history and never exhibited abusive behavior toward her children. The trial court thus clearly erred by finding statutory grounds for termination under MCL 712A.19b(3)(j).

However, "only one statutory ground need be proved to support the termination of a parent's parental rights." *In re Gonzales/Martinez*, 310 Mich App 426, 431; 871 NW2d 868 (2015). Here, clear and convincing evidence was presented to establish that the conditions leading

to adjudication continued to exist. See MCL 712A.19b(3)(c)(*i*). Mother was unable to care for the children when this matter began, in part because she lacked adequate housing for them. The initial petition indicates that, when mother dropped the children off at a DHHS office, she told a CPS worker to "file the petition and I'll call y'all [sic] when I get an apartment." Mother did have an apartment that was assessed and found suitable for the children during the proceedings below, but she was evicted in August 2024 and did not obtain suitable housing again afterward. Our Supreme Court sustained a finding of statutory grounds under MCL 712A.19b(3)(c)(*i*) when the respondent could not maintain suitable housing. *In re Trejo*, 462 Mich 341, 358-359; 612 NW2d 407 (2000). Mother refused to allow a caseworker to complete a housing assessment on multiple occasions, with the last one being completed in July 2024. She also had no apparent plan for housing the children in the future. Thus, termination was proper under MCL 712A.19b(3)(c)(*i*).

> Regarding MCL 712A.19b(3)(c)(*ii*), termination is proper when
>
> [o]ther conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Here, mother completed a psychological evaluation and was thereafter ordered to complete substance abuse treatment, including random drug screenings. Mother never engaged in these services and never completed her drug screenings. Termination was thus proper under MCL 712A.19b(3)(c)(*ii*).

Further, a parent's failure to comply with a service plan "is evidence of a parent's failure to provide proper care and custody for the child" under MCL 712A.19b(3)(g). *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003). Mother only partially complied with her CSP. She did not complete parenting classes or individual therapy, despite multiple referrals. As noted, mother likewise failed to complete a substance abuse assessment or participate in substance abuse-related services as ordered by the court. Mother missed most of her parenting time sessions, did not maintain suitable housing after her August 2024 eviction, and did not provide proof of income after January 2025. Her failure to participate in and benefit from her services was sufficient evidence she could not properly care for the children. Accordingly, termination was also proper under MCL 712A.19b(3)(g).[3]

---

[3] As part of her argument regarding statutory grounds for termination, mother mentions that she was not provided with transportation assistance or a parent partner, despite the latter being ordered by the court. Essentially, mother cursorily argues that that DHHS failed to make reasonable efforts to assist her in reuniting with the children. However, mother did not raise this argument in her statement of the issues, nor has she adequately briefed it. "A party may not simply announce a position and leave it to this Court to make the party's arguments and search for authority to support the party's position. Failure to adequately brief an issue constitutes abandonment." *Seifeddine v*

## B. BEST INTERESTS

Mother also asserts that the trial court erred by finding that termination was in the children's best interests because the court did not adequately consider the propriety of placing the children in a guardianship with mother's aunt. We agree.

To preserve an issue for appellate review, the issue must have been raised in the trial court. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Mother did not seek to establish a guardianship for the children in the trial court, so the issue is unpreserved. *Id*. This Court reviews unpreserved issues in a child protective proceeding for plain error. *In re Sanborn*, 337 Mich App at 258. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (quotation marks and citation omitted).

"Once a statutory basis for termination of parental rights has been demonstrated, the trial court must terminate parental rights if a preponderance of the evidence establishes that termination is in the best interests of the child." *In re Lombard*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367714); slip op at 5. When making its best-interests determination, "the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted).

MCL 712A.19a(9) authorizes a trial court to appoint a guardian for a minor child in a termination of parental rights case. Typically, guardianships are initiated in an effort to prevent termination of a parent's parental rights. *In re Rippy*, 330 Mich App 350, 359; 948 NW2d 131 (2019). A guardianship does not permanently separate a parent and child, "allow[ing] the child to keep a relationship with the parent when placement with the parent is not possible." *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). Additionally, for a court to consider a guardianship before termination, "either DHHS must demonstrate under MCL 712A.19a(8) that initiating the termination of parental rights to the child is clearly not in the child's best interests or the court must not order the agency to initiate termination proceedings under MCL 712A.19a(8)." *In re Rippy*, 330 Mich App at 359, citing MCL 712A.19a(9) (quotation marks and brackets omitted).

At the termination hearing, the children's foster care worker stated that DHHS had not seriously considered placing the children under guardianship because "mother ha[d] been hostile towards the foster parents" during parenting time sessions in the past. When asked on cross-examination why that would be a barrier to guardianship, the worker explained that a guardianship arrangement "would require that [mother] work together with the current placement." The foster care worker appeared convinced that the only option would be a guardianship with a nonrelative foster family. At no point did she indicate that DHHS had considered a guardianship with a

---

*Jaber*, 327 Mich App 514, 519-520; 934 NW2d 64 (2019) (citation omitted). We thus decline to address it.

relative, including mother's aunt. In making its best-interests determination, the trial court addressed the guardianship issue as follows:

> As to the question of guardianship. The person who was the—when the guardianship idea was floated around—would have been the maternal grandmother, and that's clearly not a good fit. And, at this point, the, you know, guardianship really was explored at some point and it wasn't a good fit. And, again, as was testified . . . that [guardianship] would allow the parents to retain some level of control. And that's one of the problems that I have with guardianship. Especially with children that are very young, that if something should happen or the [g]uardian should just decide not to want to do it anymore, later on, you suddenly have children 10 years down the road, who are 12 and l4, with special needs that are not adoptable, and [m]other has complete parental rights and she hasn't been around for 10 or 14 years. That's reading a lot into that and a lot of speculating, and this is not what this decision is based upon.

Here, mother's aunt consistently expressed willingness to assume guardianship of the children and had successfully cared for them for months without intervention before the petition was filed. The record contains no evidence that she was unfit or unable to provide adequate care. It appears that some communication issues between Ohio, where mother's aunt lived, and Michigan, may have stymied any attempts at applying for a guardianship. Notably, mother's aunt participated in the preliminary hearing which took place April 19, 2023. In that hearing she was informed by DHHS that she would have to wait until after the case was brought to court to pursue a guardianship. The mother's aunt was also present at the July 20, 2023 and March 6, 2025 hearings. Despite this, the record does not indicate that DHHS ever properly explored guardianship with her. Instead, the foster care worker's reticence toward exploring a guardianship appeared to be exclusively based on mother's hostility toward the children's nonrelative foster parents. The foster care worker did not take into consideration mother's relationship with her aunt.

The trial court relied on the foster care worker's testimony in concluding that guardianship would not be proper in this instance. Consequently, the trial court erroneously overlooked a guardianship with mother's aunt as an option as well, focusing instead on adoption with the foster parents. Additionally, the trial court's concern that guardianship would allow mother to retain some level of control reflects an improper preference for termination over less restrictive alternatives. The preservation of parental rights in a guardianship arrangement is a feature, not a flaw, of this alternative, as it maintains family integrity while providing children with stability and permanency. *Lombard*, ___ Mich App at ___; slip op at 6.

The court's reasoning also suggested that it disfavored the idea of pursuing a guardianship for the children in this matter because they were "very young," with both children under the age of five at the time of termination. This Court has expressly held that disfavoring guardianships for young children as a "blanket policy" is grounds for reversal. *Id*. at ___, slip op at 5-6; see also *In re Timon*, 501 Mich 867 (2017); *In re Affleck/ Kutzleb/Simpson*, 505 Mich 858 (2019). At no point did the court consider whether guardianship would be appropriate for *these specific children*, irrespective of their ages. Further, the court's speculative concern that the guardianship might fail in the future was not sufficient to justify the termination of mother's parental rights when a less restrictive alternative may have been available. Ultimately, the trial court erred by failing to

properly consider guardianship as an alternative to termination of mother's parental rights. On remand, the trial court must conduct a proper best-interests analysis that includes consideration of guardianship with mother's aunt as a viable alternative to termination.

## III. CONCLUSION

We affirm the trial court's findings and conclusions regarding statutory grounds, but vacate the trial court's best-interests determination, and remand for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ Michael F. Gadola
/s/ James Robert Redford
/s/ /Michelle M. Rick

# Court of Appeals, State of Michigan

## ORDER

IN RE DUNNAWAY MINORS

Docket No. 376581

LC No. 2023-000562-NA

Michael F. Gadola
Presiding Judge

James Robert Redford

Michelle M. Rick
Judges

For the reasons stated in the opinion issued with this order, we REMAND this case for further proceedings. We retain jurisdiction. After the remand proceedings conclude, we will review the decisions that the trial court made during those proceedings and consider any remaining issues in this appeal. Any challenges to the trial court's decisions on remand must be raised in this appeal. Therefore, the parties and the trial court must not initiate a new appeal from an order entered on remand within the scope of this appeal. The Clerk of the Court is directed to reject the initiation of a new appeal from such an order.

Respondent must initiate the proceedings on remand within 21 days of the Clerk's certification of this order, and the trial court must prioritize this matter until the proceedings are concluded. As stated in the accompanying opinion, the proceedings on remand are limited to reconsideration of whether a guardianship with mother's aunt would be an appropriate alternative to termination of mother's parental rights in this matter. The proceedings on remand are limited to this issue.

The parties must serve copies of their filings in the trial court on this Court. Respondent must file with this Court copies of all orders entered on remand within seven days of entry.

Respondent must ensure the transcript of all proceedings on remand is filed in the trial court and this Court within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

July 16, 2026
Date

_____
Chief Clerk